Ronald DAVIDSON, Plaintiff–Appellant,

v.

Thomas FLYNN, John Cunliffe, Gordon Melville, James Countryman, Howard Shaul, Gary Stevens, Dr. Albert Redmond, Ray Girdich, Thomas A. Coughlin, and Charles E. Connors, Defendants–Appellees.

No. 1822, Docket 93–2571.

United States Court of Appeals, Second Circuit.

Argued June 23, 1994.

Decided Aug. 2, 1994.

Philip B. Gerson, New York City (Arthur S. Linker, Rosenman & Colin, of counsel, on the brief), for plaintiff-appellant.

Joseph Koczaja, Asst. Atty. Gen., Albany, NY (G. Oliver Koppell, Attorney General, Peter H. Schiff, Deputy Sol. Gen., Peter G. Crary, Asst. Atty. Gen., on the brief), for defendants-appellees.

Before: NEWMAN, Chief Judge, VAN GRAAFEILAND and LEVAL, Circuit Judges.

JON O. NEWMAN, Chief Judge:

The primary question in this case, dismissed at the pleading stage, is the sufficiency under the Eighth Amendment of an allegation that correctional officers, who needed to handcuff an inmate being transported to another prison, deliberately applied the handcuffs too tightly in retaliation for his litigiousness. Ronald Davidson appeals from the July 29, 1993, judgment of the District Court for the Northern District of New York (Thomas J. McAvoy, Chief Judge) granting the motion of the defendant prison officials for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Chief Judge McAvoy adopted the Report and Recommendation of Magistrate Judge Daniel Scanlon, Jr., recommending dismissal of Davidson's complaint. We hold that under the standards enunciated by the Supreme Court in *Hudson v. McMillian,* —— U.S. ——, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), the allegations in the complaint state a cause of action for recovery based on a violation of the Eighth Amendment.

## Facts

On February 13, 1989, Davidson was being transferred from the Specialized Housing Unit ("SHU") at Elmira to the SHU at the Midstate Correctional Facility ("Midstate"). Davidson's *pro se* complaint alleges that:

> Sgt. [Gordon] Melville, the SHU sergeant, told officers [Thomas] Flynn [and John] Cunliffe to "put the chains and cuffs on this legal beagle tight. He likes to sue us".... As a result, Flynn [and] Cunliffe placed the handcuffs and leg irons and waist chain on me so tight as to cut into my flesh and reduce circulation and cause swelling. My right ankle now has a scar and numbness in the area. My wrists were numb for several months afterwards. The tight chain also hurt my spine, as the chain and padlock pressed into it.... I complained that the restraints were on too tight.

The complaint further alleges that Superintendent James Countryman and Sergeant Howard Shaul at Camp Georgetown refused to loosen the restraints and that those officials and others at Midstate denied Davidson medical care for his resulting injuries. Upon his return to Midstate, Davidson was subjected to a "Tier 3" disciplinary proceeding and subsequently sentenced to 20 more days in SHU. The complaint alleges that the disciplinary proceeding was "in violation of minimum DOCS [New York State Department of Correctional Services] standards and *Wolff[]* v. *McDonnell* Rights," though there is no specific allegation as to how the proceeding violated those rights.

The Magistrate Judge recommended dismissal on the ground that Davidson presented an escape risk and that "mechanical restraints usage in this case does not demonstrate a violation of plaintiff's constitutional rights." Chief Judge McAvoy adopted the Magistrate Judge's recommendation.

## Discussion

When reviewing the grant of a Rule 12(c) motion for judgment on the pleadings, this Court must "view the pleadings in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party." *Madonna v. United States*, 878 F.2d 62, 65 (2d Cir.1989); *see also National Association of Pharmaceutical Manufacturers, Inc. v. Ayerst Laboratories*, 850 F.2d 904, 909 n. 2 (2d Cir.1988) (indicating that Court treats motion for judgment on pleadings as if it were motion to dismiss).

### A. The Eighth Amendment Claims

In *Hudson v. McMillian*, —— U.S. ——, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), the Supreme Court clarified the standards for determining whether Eighth Amendment violations have occurred:

> [W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley* [*v. Albers*, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) ]: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.

*Id.* at ——, 112 S.Ct. at 999; *see also id.* at ——, 112 S.Ct. at 998–99 (indicating that the *Whitley* standard was derived from *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.) (Friendly, J.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)).

More specifically, a court should consider both the "objective" and "subjective" components of an alleged violation when examining an Eighth Amendment claim. *See Hudson*, —— U.S. at ——, 112 S.Ct. at 999. The objective component relates to the seriousness of the injury; however, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Id.* at ——, 112 S.Ct. at 997.[1]

---

1. Hence, the seriousness of the injury is "relevant to the Eighth Amendment inquiry, but does not end it." *Id.* at ——, 112 S.Ct. at 995. Indeed, the Court specifically rejected the dissent's theory that an inmate must show serious injury *in addition to* the unnecessary and wanton inflic-

tion of pain. *Id.* at ——, 112 S.Ct. at 1001. The Court added that "[t]he Eighth Amendment's prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort ' "repugnant

The subjective component relates to whether the defendants had a "wanton" state of mind when they were engaging in the alleged misconduct.[2] *See id.* at ——, 112 S.Ct. at 999; *Wilson v. Seiter,* 501 U.S. 294, 302–03, 111 S.Ct. 2321, 2326, 115 L.Ed.2d 271 (1991). The Court indicated in *Hudson* that where an inmate has alleged that an improper motive led to the use of excessive force by correctional officers, an examination of the particular circumstances surrounding the alleged misconduct may be warranted:

> In determining whether the use of force was wanton and unnecessary, it may … be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and "any efforts made to temper the severity of a forceful response."

*Hudson,* —— U.S. at ——, 112 S.Ct. at 999 (quoting *Whitley,* 475 U.S. at 321, 106 S.Ct. at 1085); *see also Johnson,* 481 F.2d at 1033. The complaint in the pending case plainly alleges both the objective and subjective components of a cause of action for an Eighth Amendment violation: the handcuffs were allegedly placed on the plaintiff "too tight[ly]," leading to serious and permanent physical injury (the objective component), and such excessive force was applied to the plaintiff wantonly and maliciously in retaliation for being a litigious inmate (the subjective component). The Magistrate Judge erred in deeming the complaint limited to whether there was need for mechanical restraints. The claim is not based on the use of handcuffs, but on their deliberate and improperly motivated application so tightly as to injure.

The defendants argue that even if the plaintiff has sufficiently alleged a retaliatory (and hence wanton) motive, their conduct would be permissible under the "mixed motivation" test of *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). They contend that because the plaintiff was an escape risk, tight mechanical restraints would have been placed on him even in the absence of an improper motive. But the essence of the plaintiff's complaint is not that the restraints were placed on him just "tightly," but that they were placed on him "*too* tight[ly]," *i.e.,* in excess of what was necessary under the circumstances. The key inquiry under *Hudson* and its precedents is whether the alleged conduct involved "unnecessary and wanton infliction of pain." —— U.S. at ——, 112 S.Ct. at 1000 (quoting *Whitley,* 475 U.S. at 320, 106 S.Ct. at 1085). Even if it were undisputed that *some* restraint, beyond that normally used when transporting prisoners, was necessary because the plaintiff was an escape risk,[3] material questions of fact would still remain as to whether the risk of escape made it necessary for the defendants to shackle the plaintiff so tightly as to cause severe pain and permanent injury, and, if not, whether the officers used such *excessive* force in retaliation for Davidson's litigiousness.

---

to the conscience of mankind." ' " —— U.S. at ——, 112 S.Ct. at 1000 (quoting *Whitley,* 475 U.S. at 327, 106 S.Ct. at 1088); *see also Romano v. Howarth,* 998 F.2d 101, 105 (2d Cir.1993). The alleged use of force in this case—resulting in permanent scarring and "numbness"—is clearly more than *de minimis.*

2. "[W]antonness does not have a fixed meaning but must be determined with 'due regard for differences in the kind of conduct against which an Eighth Amendment objection is lodged.' " *Wilson v. Seiter,* 501 U.S. 294, 302–03, 111 S.Ct. 2321, 2326, 115 L.Ed.2d 271 (1991) (quoting *Whitley,* 475 U.S. at 320, 106 S.Ct. at 1084). Furthermore, the wantonness of conduct does not depend upon its effect on the prisoner, but rather "upon the constraints facing the *official.*" *Id.* (emphasis in original).

3. Contrary to the defendants' contention that it is "undisputed that plaintiff was an escape risk," *see* Appe. Br. at 13, Davidson has expressly denied that he was an escape risk in his *pro se* submissions. *See* Appx. at 52 (plaintiff's objection to Magistrate Judge's Recommendation, stating, "As previously set forth, I am not considered an escape risk by the DOCS."). Hence, there is a material issue of fact as to whether Davidson was indeed an escape risk at the time of the alleged misconduct. As this Court stated in rejecting a similar dual motivation argument by defendants seeking dismissal of a section 1983 claim based on *Mt. Healthy,* "it is axiomatic that the district court could not consider the defendants' statements of fact in assessing the sufficiency of the complaint." *MacFarlane v. Grasso,* 696 F.2d 217, 225 (2d Cir.1982).

■ The plaintiff's complaint also sufficiently alleges that he was "intentionally den[ied] or delay[ed] access to medical care." *See Estelle v. Gamble*, 429 U.S. 97, 104–05, 97 S.Ct. 285, 291–92, 50 L.Ed.2d 251 (1976). The complaint indicates the relevant dates and places of the alleged misconduct and the individuals involved, and alleges that in spite of Davidson's vociferous complaints of severe pain, he was "denied medical care" at Camp Georgetown and "thrown into an unheated van ... because [he] complained that the restraints were on too tight." Later, at Midstate, "officials refused to see to it that [his] wrists and ankles were properly treated." Hence, the complaint sets forth specific allegations that, if proved, "would allow a reasonable fact finder to conclude that [the plaintiff] had a serious medical need *and* that the defendants were deliberately indifferent to that need." *Clemmons v. Bohannon*, 956 F.2d 1523, 1526 (10th Cir.1992) (in banc) (emphasis in original).

We do not preclude the possibility that both of the claims that we hold sufficient at the pleading stage may later be dismissed on a summary judgment motion if, after discovery, there remains no genuine issue as to any material fact and the District Court determines that the defendants are entitled to judgment as a matter of law. *See* Fed.R.Civ. Proc. 56(c); *cf. Robles v. Coughlin*, 725 F.2d 12, 16 (2d Cir.1983) (reversing District Court's *sua sponte* dismissal of inmates' section 1983 complaints on the pleadings, but noting that complaints may be dismissible "at a later stage").

### B. The Procedural Due Process Claim

■ Magistrate Judge Scanlon recommended dismissal of Davidson's procedural due process claim based on the plaintiff's failure to plead specific facts related to the alleged deprivations at his disciplinary hearing. With respect to this claim, the complaint simply asserts, without any explanation, that the disciplinary proceeding resulting in 20 days of SHU confinement was "in violation of minimum DOCS standards" and *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

Under other circumstances, such sparse pleadings by a *pro se* litigant unfamiliar with the requirements of the legal system may be sufficient at least to permit the plaintiff to amend his complaint to state a cause of action. *See Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 175–76, 66 L.Ed.2d 163 (1980) (prisoner's *pro se* complaint held to "less stringent standards than formal pleadings drafted by lawyers"). The plaintiff in the case at bar, however, is an extremely litigious inmate who is quite familiar with the legal system and with pleading requirements. Indeed, the plaintiff at one point had at least 30 simultaneously pending suits. *See Davidson v. Smith*, 9 F.3d 4, 6 (2d Cir.1993). We hold that, under these circumstances, this plaintiff's conclusory allegation of *Wolff v. McDonnell* violations, without any indication of what aspect of required procedure was not provided, renders his due process claim insufficient. *Cf. Polur v. Raffe*, 912 F.2d 52, 56 (2d Cir.1990), *cert. denied*, 499 U.S. 937, 111 S.Ct. 1389, 113 L.Ed.2d 446 (1991) (complaints based on violation of constitutional right must contain more than conclusory allegation to avoid dismissal); *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir.1987) (same).

The judgment of the District Court is reversed, and the case remanded for further proceedings.